Good morning. Neda Edwards on behalf of Appellant. Keeping in mind the admonition to keep the remarks brief and to avoid repetition of those items stated in the briefs, I would just like to point out a few things that I believe need clarification and or some further elaboration. First of all, Mr. Richeson, the appellant in this case, has never asked for any special favors from FedEx. He's followed all of the rules and procedures. When he was first released to return to a courier position by his doctor, Dr. Chan, at the Curlin-Job Clinic, he followed the procedures set forth in FedEx's employment manual and supplied a written document to FedEx. stating the date he was released and that he could return to full employment as a courier. When that did not prove to be enough to satisfy FedEx, he responded to their request for additional documentation from his doctor. I think he made no less than two or three more trips to the doctor to get that additional documentation. Then when they requested that he had a functional capacity exam, he did arrange with his doctor to have that and to have his doctor, Dr. Chan, at the Curlin-Job Clinic, this is back in 2001, give a full and complete evaluation using the functional capacity exam to provide all the information that FedEx would need to release him to apply and accept a courier position. All of the documents showed that Mr. Richardson is qualified to perform all the essential functions, the physical functions of his job. There's no question about his other abilities. He did perform the job before. FedEx has offered nothing to rebut that. Nevertheless, and Mr. Richardson then went on, not asking for any special favors, but went on to follow the normal procedure at FedEx. He's been the number one candidate on several occasions. Regardless of all of the information, FedEx's continual posture has been to say, no, you can't have the job because of your record of disability, your permanent job restrictions. Does your client, what are the nature of the permanent job restrictions, lifting restrictions, as I recall? I beg your pardon? Does your client still have lifting restrictions? Yes, he does. Over 80 pounds, heavy lifting, not the medium heavy lifting required by a courier position, which is why Dr. Chan and Dr. Sousa released him to perform the courier position. I may be mistaken, but I thought the courier position required more lifting than he's capable of doing under this restriction. Am I mistaken in that? I believe I believe so. I think that's the spin that FedEx has put on that. But I guess FedEx can point to me in the record where where they what they rely on. Using the job description that FedEx always relied on prior to, as a matter of fact, right up until the time of the summary judgment motion. That was their normal job description and the intracore job report. The applicant needs to be able to lift up to 75 pounds and move with assistance up to 155, excuse me, up to 150 pounds. That's with assistance using a dolly or another person pushing, pulling. The functional capacity exam and Dr. Chan believe he can meet those requirements. There's no evidence, no medical evidence to the contrary. Now, FedEx, in their summary judgment motion, gave some testimony from various managers. Those particular managers who've been instrumental in denying the job to Mr. Richardson, that there's somehow more required than what was required for years on their using their job, ordinary job description and the intracore report. The question I have is that you have some conflict, obviously, between Dr. Chan and his past history. And your burden, it seems to me, is really to show the pretext. And that's what I think the case rises and falls on as I read the record. So I need, I would appreciate hearing from you what in detail you think meets the substantial evidence of pretext so as to meet your burden that would result in a decision in favor of your client. Okay. As I explained in my brief, I do not believe this is a pretext case. Okay. I think under Enloe and a variety of cases, and I read hundreds, if not thousands of cases, trying to find something that would be directly on point. Enloe is the closest case. When you use the characteristics of a protected class as part of the reason to deny, or the only reason in this case, to deny a member of the protected class a job, that's facial, that's discrimination on its face. By discrimination on its face, I mean that the intent can be, it's essentially, the intent to discriminate is admitted by the defense. What if you had a person who had no arms who wanted to be a courier and the job requires lifting and there's no accommodation, the person can't for some reason use artificial limbs or something? Why is, I'm not really sure I understand how you would come out with your construct. If the person doesn't meet the qualifications. Okay. That's an example I hadn't considered. If the person without the arms had some other means of doing the job and could perform the job, I mean, in this case, Dr. Chan says the old restrictions are no longer valid. I mean, medical science, our knowledge of medicine shows that people have miraculous recoveries. This is not so miraculous, but it's certainly a recovery. A well-respected physician from a well-respected clinic has come to this decision. All other evidence or speculation is just that, it's speculation by laypeople. With respect to showing pretext, once you have shown that the employer has used the protected class to make the distinction, to treat certain people differently, it seems to me that then we fall into, it's not that they can't prove, they can't bar him from the job, but the burden shifts to him, I mean, to them, to the employer, to prove either under the health and safety defense. Let me stop there. What's the support for that burden scheme that you're suggesting now? Well, first of all, it's in the government code. That's the statute itself. The language of the statute itself commences by saying, first of all, there's no qualification. The party, the employee discriminated against does not have to show that he's qualified. That language that is in the Federal statute is not present under the FEA, the Fair Employment and Housing Act. The proving essential functions moves into a separate paragraph, an exception, and has been interpreted to be under Bogatti, the case that I brought to the Court, the recent case I brought to the Court's attention last week, Green v. State, and under the California Code of Regulations, which is also cited in my brief, and I have the site. We have that. That's fine. Okay. It's 7293.8. Have all interpreted proving essential functions in inability to perform the essential functions of the job and the health and safety defense as affirmative defenses on the part of the employer. The employer has an out. If, in your example, he has no arms and some insane physician says he can do the job anyway and he can't, the employer will be able to prove that. The burden will shift to them. In this instance, and I would like to point that out before I use up all my time, FedEx is relying on, I think what they call it is a, to quote them, a mistaken good faith belief defense. That's all dovetails in with this erroneous argument about pretext, which should not apply in an overt discrimination case. The reason it should be. Oh, go ahead. But the reason that this is important is applying that kind of the mistaken good faith defense process of analysis in a situation where you have statutory language that's different from the federal would essentially vitiate the provisions of the statute having to do with placing the affirmative defense on the employer to prove inability to perform and the health and safety defense. Because they would be rendered surplusage. If an employer, for example, did not have to meet this burden of proving inability to perform, proving it with current medical evidence, proving that he's a danger to himself and all of those things, if the employer only has to say, hey, you know, I'm wrong, so what? I can't prove these defenses. But, you know, I just made a mistake. I have a mistaken good faith belief that he can't perform it. Well, then why would any employer ever take on the burden which is set out by the statute? Counsel, you have exceeded your time, and I think we understand your point. Okay. Thank you so much. I do apologize if I repeated myself. No, no apologies necessary. It's been very helpful to have you lay out your position. And we will hear now from FedEx. Good morning. Sandra Eisen on behalf of FedEx. I'll start by answering, Your Honor, Justice Fletcher's question regarding where in the record does FedEx rely upon Mr. Richardson's inability to perform the job. And we find that in Dr. Chong's testimony and in the functional capacity evaluation that FedEx relied upon in conducting an individualized analysis of Mr. Richardson's situation to determine if he could perform the functions. And we find that in Statement of Fact 17 on page 685, which references Mr. Shemp's declaration. 685 in the excerpts? Yes, Your Honor. That is actually just the Statement of Fact that the district court accepted. But the actual evidence is Mr. Shemp's declaration, which is in Volume 1 at page 75. Okay. Slow down. Slow down, Sandra. Sorry. I wasn't sure if you wanted this. Okay. It's number 17 on page 65. According to a functional capacity evaluation performed on July 2001 ordered by Dr. Chong the plaintiff continues to have a lifting restriction of 40 pounds frequently. According to test results, cannot push or pull more than 30 pounds frequently and 70 pounds occasionally. That you contend is an uncontested fact. That's correct, Your Honor. And then you're pointing me somewhere else in the excerpts for the ‑‑ Well, to support that Statement of Fact, it's in Volume 1, page 75. It's Mr. Shemp's declaration, which is referencing functional capacity evaluation. Okay. And I'm there, and where am I supposed to look? Let's see. It is paragraph 12. And the functional capacity evaluation is attached. Let's see. Is that this paragraph? Okay. So I'm with you. Page 12. So according to the functional evaluation test in 2001, he has this lifting restriction. It's the position of risk management. I'm now reading paragraph 13, that there are objective findings that support the original lifting restrictions. We did not agree with the lessened lifting restriction imposed by Dr. Chong because there was no explanation from him supporting a change in Mr. Shemp's medical conditions, a condition that would explain a reduction in the permanent functional restriction. In other words, your expert disagrees with his doctor. Correct. But part of the problem was that we couldn't get clarification from Dr. Chong until we actually took his deposition in the litigation. And Dr. Chong stated, and this is Statement of Fact, uncomproverted Statement of Fact 25, which is on page 688. Dr. Chong stated that when he was asked whether it was realistic to think the plaintiff could do a job where he had to lift 40-pound packages one-third to one-half of his workday. This isn't even getting to the 75-pound requirement. Dr. Chong noted that before he can do that, he's got to get in shape first. Because it wasn't just an issue of lifting for Mr. Richardson. It was a matter of cardiovascular fatigue, according to the FCE. He fatigued quite quickly after lifting. And if he is not in shape, then it's more likely he's going to hurt himself. Let me make sure I understand your position. And I wasn't entirely sure from the briefing. Is it your position that regardless of where the burden of proof falls, you win? Or do you need to have a particular burden-shifting analysis to prevail? Well, obviously we believe there has to be a burden-shifting analysis. But we think even regardless of the burden-shifting analysis, we prevail on the uncontroverted statement of facts from Mr. Richardson's own testimony, his doctor's testimony. Mr. Richardson admits he's got to be able to lift that. He's never been able to do that since injuring himself. He was injured while a courier, and he's been accommodated by FedEx in a drug control agent position ever since. So he's never been back doing that work, doing the courier work, with the restrictions. And so it's our position that based on his own testimony, his own admissions and his doctor's admissions. So even if you bear the burden to demonstrate that he's not qualified, rather than his bearing the burden to demonstrate that he is, your view is the evidence without contradiction shows that he's not minimally qualified. Correct. And what's interesting is these cases are always a little bit difficult for me to analyze, because at the district court level, the trial judge indicated that he's met his burden of showing he's qualified because he had this one-page release from Dr. Chong that said he was released to full duty, whatever that meant at that time. But so in that sense, the trial court decided he already met the burden that he was qualified. And so we had to come forward and say, but this is why we made the decision. And in the context of a disability discrimination case, which is contrasted with a reasonable accommodation case, there's that discriminatory intent element. If FedEx treated all couriers this way, any courier with a lifting restriction, you can't come to work for us. And he gets closer to his argument. That's closer to the facts in the Green case. But we do individualized analyses of each person like they didn't do in the Green case. We looked at all the information. Ms. Edwards gave a nice introduction of that when she started. Well, he did this. He did this. Yes, we got all the information together and looked at it and determined he just couldn't do the work. That is an honest, good-faith belief. The plaintiff cannot come forward with evidence showing that it was false or that it was a pretext. Even if he can show, hey, this isn't correct, through a battle of experts, that's not enough. Because you have to show a discriminatory intent, which, as I understand legislative history is, are you making decisions based on stereotypes of people's inabilities or disabilities? And that's not what's happening here. At what point, though, does the battle of the experts become a factual question where it should go to trial to determine this? So, in other words, you can't have a situation where you have a battle of the experts, but in good faith FedEx keeps saying, well, I don't really think they can work here because of this particular lifting restriction. You'd have a situation where the employee would never, under that scenario, ever get to show their case that, in fact, they can lift 75 pounds. So where do you cross over on the factual issue? The case law, and I believe it's brief, which is cited in the brief, states that if the employer has made a decision based upon the best objective evidence or medical evidence available to them, that decision is to be given deference. In other words, it doesn't seem to make sense in a disability discrimination case, setting aside a reasonable accommodation case. It doesn't make sense to have a jury decide to look at the medical records and decide for themselves whether the employee can do the job. The question is, what was FedEx's intent in reaching its decision? And so I think where you draw the line is, simply has the plaintiff brought forth substantial evidence, specific and substantive evidence, indicating that FedEx's decision was something more than what it was, an individualized analysis where they took the time to make the decision. He's still employed. It's not as if we booted him out the door and said he's good for nothing. He's still a productive employee for us. But there's a trick, and your adversary's trying to get at this, and it's a hard thing to kind of get your hands on, and it's almost a conceptual problem of what do we mean by pretext. You're not getting at him because of, I mean, both of you, I think, agree with this. We may disagree with this sort of legal characterization of what you're doing. You don't have a pretext other than what you're saying. That is to say, you simply disagree with the evaluation. There's no hidden agenda here. It just kind of looks to me as though he thinks he can do it. His doctor thinks he can do it. You and your experts think he can't do it. I don't see where that's really a pretext question. I mean, there's nothing hidden. Nobody is being dishonest about their motivations. You just disagree. Correct, but I think that's why FedEx prevails, because it's not a false reason, and it's not a pretext, and, in fact, the only thing we ended up disagreeing with in the end was Dr. Chong's one-page statement saying he was released to work, because even after Dr. Chong was presented with all of the records and asked questions in his deposition, as far as I could tell, he became FedEx's witness to say, yeah, I don't think he can do this job yet until he gets into shape. So we then had a firm determination, a clarification that we felt gave us the answer, and that was part of the discovery process is to get this clarification. That was all part of the interactive process in the context. If I'm trying to figure out whether I even get to pretext, what's the level of qualification under the applicable law here that he has to show? He has to show that he has to go through. Is it essential functions, or is it qualified? Well, I guess it depends. Is that the same thing? I think that's essentially the same thing, but in a discrimination case, I'm not even sure. I think simply the question is this. FedEx's decision, right or wrong, was it motivated by a discriminatory intent? In other words, is there evidence that it was false? Is there evidence that it was pretextual? And Green is a good case to look at to distinguish from FedEx's situation, which is why Green really doesn't apply here in terms of the facts. But in that case, the individual had two different disabilities going on, a back injury and hepatitis C. He was returned from his back injury, but the workers' comp claims person picked up an old report in 1997 regarding his hepatitis C that said that he was restricted to light duty. Based upon that alone, without any individualized analysis, they said you can't do the job, even though he'd been doing it for years, which is different here. And so there is some really clear evidence that they're making a decision based upon stereotypes, that people who have these restrictions can't do the job, even though this guy had been doing it. And they didn't check to determine. If they had looked a little further, they would have realized that those restrictions expired like a year before they fired him because his injections had stopped. And so it's, you know, I guess it's kind of like the old saying, pornography, you know it when you see it. You know, you just look at the facts that you have before you on each case and where there's just simply not any evidence of any improper motive, that the decision was false. The plaintiff simply cannot prevail, or there's no genuine issue of material fact for trial. Thank you, counsel. You have exceeded your time, and I think we understand your position. Thank you. Ms. Edwards, you've used up all your time, but we'll restore a minute for rebuttal if you'd like to take it. First of all, Your Honor, the pretext, excuse me, the stereotype is clearly shown by FedEx because they have a belief that once injured, you can never recover. That is a stereotype about a disabled person. I don't think the record shows that. Some people do recover, but the record shows is that they don't think that he has recovered. Well, if you look at all of the citations that I gave in my brief as to all of their comments, permanent restrictions that can never be recovered, this sounds very generic. But even if it's only with him, they're saying that this kind of a person can never recover. They have no medicals. They have no expert that said this. This is just their personal belief. But what do you do with your own doctor who says, well, he needs to get in shape, and he's not now in shape, and that was as to 40 pounds. If you read Dr. Chan's testimony in full, what happens is bits and pieces have been taken out of context. Dr. Chan never repudiated. In fact, he clearly, if you read the entire deposition of the excerpts that are in the record, you'll see that he never repudiated his full. We're not talking about that one-page document, but it was a full report, three or four pages where he analyzed the functional capacity exam, everything. He never reputed that in his deposition. His opinion remains today the same as it was when he wrote that on July 16th, 2001. What he was talking about is getting in shape. Anybody needs to get in shape. He also makes the point in the deposition that anyone who's not working or working out, this would be the guy off the street that goes in who doesn't get all these kinds of tests, would be more likely to injure himself. But in his medical opinion, Steve can do the – Mr. Richardson can do the work. I mean, he concludes by saying, you know, there's a concern for anyone. Anybody, my partner pointed out, had him admit that anyone who gets into a lifting job is going to be more at risk for getting an injury. Not just Mr. Richardson. And furthermore, there's a possibility of re-injury and surgery, but he can't quantify it, and he says, My recommendation is based on my best estimate of what he will be able to do. Thank you, counsel. Thank you. We appreciate the arguments of both parties, and the case just argued is submitted.
judges: Graber, McKeown, W. Fletcher